UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WESSAM BOU-ASSALY,

        Plaintiff,

                                Case No.  17-10007
vs.                             HON.  GEORGE CARAM STEEH

GEORGE P. MANN & ASSOCIATES, P.C.,
GEORGE P. MANN,
MARGOLIS LAW, P.C.,
and LAURENCE H. MARGOLIS,

        Defendants.
_____/

ORDER DENYING DEFENDANTS GEORGE P. MANN
& ASSOCIATES, P.C. AND GEORGE P. MANN'S MOTION
TO DISMISS (DOC. 23) AND DENYING MARGOLIS LAW, P.C.
<u>AND LAURENCE H. MARGOLIS' MOTION TO DISMISS (DOC. 15)</u>

Plaintiff Wessam Bou-Assaly brings two counts of attorney

malpractice.  Count I is filed against George P. Mann & Associates, P.C.

and George P. Mann, hereafter the Mann defendants.  Count II is filed

against Margolis Law P.C. and Laurence H. Margolis, hereafter the

Margolis defendants.  The matter is presently before the Court on motions

to dismiss by all the defendants.  Oral argument was held on June 15,

2017.  For the reasons stated below, both motions are DENIED.

# I. Background

Plaintiff immigrated to the United States in 2004. (Doc. 1 at PageID 4). He obtained a green card in 2010, was classified as a lawful permanent resident, and eventually sought to become a naturalized citizen. (*Id.*). In 2014, plaintiff, a doctor, was charged with committing misdemeanor crimes involving inappropriate sexual conduct in his workplace. (*Id.*). Plaintiff was represented by criminal defense attorney Joseph Simon and retained the Margolis defendants to address the criminal case's impact on his immigration status. (Doc. 1 at PageID 5).

On or about April 24, 2014, plaintiff was offered a *Cobbs* agreement. (Doc. 1 at PageID 6). Pursuant to this agreement, plaintiff would plead no contest to a single charge of attempted criminal sexual conduct in the fourth degree and be sentenced to probation. (*Id.*). Plaintiff would be subject to imprisonment only if he violated his probation terms. (*Id.*). Plaintiff discussed this agreement with the Margolis defendants on or about April 24, 2014. (Doc. 1 at PageID 6-7). Margolis advised that pleading to this charge and receiving the proposed sentence would not adversely affect plaintiff's immigration status. (Doc. 1 at PageID 7). Plaintiff, relying on this advice, pleaded no contest to criminal sexual conduct in the fourth degree on April 24, 2014. (*Id.*).

Plaintiff thereafter consulted Margolis about an international job offer. (Doc. 1 at PageID 8). Plaintiff questioned whether moving abroad would impact his immigration status and ability to re-enter the United States. (*Id.*). Margolis advised that plaintiff may have re-entry issues and recommended that he consult with Mann. (Doc. 1 at PageID 8-9). Plaintiff retained Mann in May 2014, and based on his advice, accepted a job in the United Arab Emirates. (Doc. 1 at PageID 9).

Plaintiff's sentencing hearing was held on June 13, 2014. (Doc. 1 at PageID 10). Margolis did not attend. (*Id.*). Unlike the sentence anticipated by the Cobbs agreement, plaintiff was sentenced to 24 months of probation, which included a suspended 365 day jail sentence. (*Id.*). The state court judge permitted plaintiff to leave the country to work abroad during his probation period. (*Id.*). Plaintiff moved to the United Arab Emirates in July 2014. (Doc. 1 at PageID 12-13).

The Margolis defendants learned of plaintiff's sentence in July 2015 by reading a news report. (Doc. 1 at PageID 13). Margolis thereafter contacted plaintiff to inquire whether he was in the United States. (*Id.*). Plaintiff responded that he was abroad but intended to return. (Doc. 1 at PageID 13). Margolis did not advise plaintiff that his sentence would affect his ability to re-enter the United States because it differed from that

contemplated by the *Cobbs* agreement with inclusion of the suspended jail sentence.  (Doc. 1 at PageID 14).

Plaintiff returned to the United States on July 24, 2015.  (Doc. 1 at PageID 17).  Immigration officials determined that, based on plaintiff's suspended jail sentence, he was inadmissible for re-entry.  (Doc. 1 at PageID 18).  Plaintiff asserts that defendants never advised him that a 365 day suspended jail sentence could adversely impact his immigration status and ability to re-enter the United States.  (Doc. 1 at PageID 19).  Plaintiff was detained in jail until finally deported in August 2015.  (Doc. 1 at PageID 21).

Plaintiff later retained Stephen Linden, who filed a motion to set aside or modify plaintiff's criminal judgment.  (Doc. 1 at PageID 22).  A motion hearing was held on November 13, 2015.  (*Id.*).  Margolis testified that plaintiff relied on the Margolis defendants' advice when entering his plea in April 2014 and later received a suspended jail sentence that rendered him inadmissible to re-enter the United States.  (*Id.*).  Margolis further stated that, in order to avoid plaintiff's immigration issues, he should have told Simon to make sure plaintiff was not sentenced to "jail of any sort," even a suspended sentence, and should have attended plaintiff's sentencing hearing.  (Doc. 1 at PageID 23).  The state court found that the suspended

jail term was mistakenly ordered and issued an amended judgment that omitted the suspended jail term. (*Id.*; Doc. 19 at PageID 216). Plaintiff currently resides in the United Arab Emirates and purportedly does not know as yet whether the amended judgment of sentence will affect his status an inadmissible alien. (Doc. 1 at PageID 23-24).

## II. Legal Standard

### A. Federal Rule of Civil Procedure 12(b)(1)

"Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks." *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir.1994). "A *facial* attack is a challenge to the sufficiency of the pleading itself. On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the non-moving party." *Id.* (emphasis in original). "A *factual* attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction. On such a motion, no presumptive truthfulness applies to the factual allegations" and "the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (emphasis in original). The Mann defendants challenge regarding the

amount in controversy is a factual attack. *See Allstate Ins. Co. v. Renou*, 32 F. Supp. 3d 856, 860 (E.D. Mich. 2014).

"Where subject matter jurisdiction is challenged pursuant to 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Michigan S. R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n,* 287 F.3d 568, 573 (6th Cir.2002); *see also Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 324 (6th Cir.1990). "The plaintiff must establish subject matter jurisdiction by a preponderance of the evidence." *Renou*, 32 F. Supp. 3d at 860 (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 189 (1936)).

## B. Federal Rule of Civil Procedure 12(b)(6)

When a party attacks a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must decide whether the complaint states a claim upon which relief may be granted. Generally speaking, the court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether the plaintiff's factual allegations present plausible claims. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007). Even though a complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all

of the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

## III. Analysis

## A. The Mann Defendants' Motion to Dismiss

The Mann defendants argue that, pursuant to Fed. R. Civ. P. 12(h)(3), the Complaint must be dismissed for lack of subject matter jurisdiction because plaintiff failed to plead an amount in controversy that exceeds $75,000.  Fed. R. Civ. P. 12(h)(3) permits the Court to dismiss an action, *sua sponte*, if it "determines at any time that it lacks subject-matter jurisdiction."  *Id.*  The Mann defendants' motion to dismiss should have been made pursuant to Fed. R. Civ. P. 12(b)(1).  The Court will, therefore, construe their 12(h)(3) motion as a 12(b)(1) motion.

The Mann defendants argue two theories.  First, they assert that plaintiff cannot plead an amount in controversy exceeding $75,000 against the Mann defendants.  Second, they claim that the Mann and Margolis defendants are not jointly and severally liable, and therefore, plaintiff cannot aggregate his damages to establish an amount in controversy in excess of $75,000.  The Court examines each argument below.

**1. Plaintiff's Damages Against the Mann Defendants**

Plaintiff pleaded that, as a result of the Mann defendants' negligence, he sustained damage including substantial expenses, physical injury, mental distress, loss of liberty, and the loss of the ability to work, raise his children, and live as a family in the United States.

The Mann defendants categorize these damages in three groups, exemplary, vague, and insignificant, and assert that plaintiff has not pleaded an amount in controversy that exceeds $75,000.

The Mann defendants assert that damages for mental distress, loss of liberty, and the loss of the ability to work, raise his children, and live as a family in the United States are "not stated in the Complaint as [ ] compensatory or nominal damages," and therefore, must be labeled exemplary damages. The Mann defendants then argue that exemplary damages cannot be awarded here because plaintiff has not pleaded that the Mann defendants acted maliciously, willfully, or wantonly. This argument is misguided.

In Michigan, compensatory damages include both economic and non-economic loss damage caused by a defendant. Michigan cases also refer to compensatory damages as actual damages and ordinary damages. *See e.g., Veselenak v. Smith*, 414 Mich. 567 (1982). Compensatory damages

"include compensation for mental distress and anguish." *Id.* at 574. Mental distress and anguish include shame, mortification, mental pain and anxiety, annoyance, discomfiture, and humiliation. *Id.* (citing *Beath v. Rapid R. Co.*, 119 Mich. 512, 517 (1899); *Grenawalt v. Nyhuis*, 335 Mich. 76, 87 (1952)).

Exemplary damages are a category of damages distinct from "ordinary [compensatory] damages for mental distress," *id.*, and punitive damages. *In re Disaster at Detroit Metro. Airport on Aug. 16, 1987*, 750 F. Supp. 793, 805 (E.D. Mich. 1989). Exemplary damages are "designed to compensate plaintiffs for humiliation, outrage and indignity resulting from a defendant's willful, wanton, or malicious conduct." *Id.* But, even if a defendant's conduct is willful, wanton, or malicious, courts do not award exemplary damages for injuries to feelings that are "duplicative of the award of ordinary [compensatory] damages for mental distress and anguish." *Veselenak*, 414 Mich. at 572.

The Mann defendants' focus on exemplary damages is misplaced. They attempt to classify all damages from plaintiff's mental distress, loss of liberty, and the loss of the ability to work, raise his children, and live as a family in the United States as exemplary damages. This characterization fails. Plaintiff may collect ordinary, compensatory damages for these injuries. Furthermore, plaintiff may collect compensatory damages without

proving malice, wanton, or willful conduct. Finally, the Complaint need not specify that it seeks compensatory damages for these injuries. It is apparent. The Court, therefore, finds that plaintiff has pleaded compensatory damages that may be considered in determining whether plaintiff has pleaded an amount in controversy that exceeds $75,000.

The Mann defendants take issue with plaintiff pleading "substantial expense." They assert that plaintiff is "still working as a medical doctor," and therefore, there is no "loss of income," and this category of damages is "entirely vague." (Doc. 23 at PageID 257). It is not clear whether plaintiff suffered a loss in income as a result of a different salary. However, it is clear that the Court cannot assume the absence of economic loss damages based on the pleading in the complaint.

The Mann defendants seem to concede that plaintiff pleaded and may recover damages for physical injury. But they argue that there are no allegations regarding whether the injury persists or information on treatment costs. The Mann defendants, therefore, assert that damages related to these physical injuries are "quantitatively insignificant." The amount of damages that plaintiff may recover from his physical injuries is not a legal certainty, nor is the total amount of damages that plaintiff may collect for all of his other injuries. The Court, therefore, cannot find that

plaintiff failed to plead the requisite amount in controversy against the Mann defendants.

## 2. Aggregating Liability of All Four Defendants

In addition to arguing that plaintiff has not stated the requisite amount in controversy against them, the Mann defendants argue that plaintiff cannot meet the jurisdictional requirement by aggregating his claims against all four defendants.

The Mann defendants assert that, in diversity cases with multiple defendants, a plaintiff may only aggregate damages to satisfy the amount in controversy requirement if the defendants are jointly liable.  But, if the defendants are severally liable, the plaintiff must satisfy the amount in controversy requirement against each individual defendant.  They cite *Motorists Mut. Ins. Co. v. Simpson*, 404 F.2d 511 (7th Cir. 1969) to support this assertion.  *Id.* at 513.[1]  "[T]hough relatively underdeveloped" here, the "defendant-aggregation" principle is also recognized as the "settled general rule" in the Sixth Circuit.  *Siding & Insulation Co. v. Acuity Mut. Ins. Co.*,

---

[1] The Mann defendant's brief, (Doc. 23 at PageID 255), includes a block quotation that ends with a citation to *Motorists Mut. Ins. Co. v. Simpson*.  The Court, however, notes that the quoted language does not appear in that opinion.  Instead, it seems that the Mann defendants rely on *Middle Tennessee News Co. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077 (7th Cir. 2001).  The language that the Mann defendants' quote appears on page 1081 of that opinion.

754 F.3d 367, 373 (6th Cir. 2014) (citing *Fechheimer Bros. Co. v. Barnwasser*, 146 F.2d 974, 976–77 (6th Cir. 1945)).

The Mann defendants seem to argue that joint liability does not exist because, by stating a claim against the Mann defendants in Count I and the Margolis defendants in Count II, the Complaint "established a clear separation of liability" between the Mann and Margolis defendants.  (Doc. 23 at PageID 255).  They also take issue with the Complaint's failure to explicitly plead joint liability.  Without joint liability, the Mann defendants assert that plaintiff cannot aggregate damages, and therefore, cannot plead an amount in controversy that exceeds $75,000.

Plaintiff responds that the Mann defendants have misstated the applicable law.  "As part of its tort reform legislation, the Michigan Legislature generally abolished joint and several liability and replaced it with 'fair share liability.'"  *Am. Home Mortg. Acceptance, Inc. v. Appraisal Place, Inc.*, 476 F. Supp. 2d 645, 648 (E.D. Mich. 2007) (citing *Smiley v. Corrigan,* 248 Mich.App. 51, 55, 638 N.W.2d 151 (2002)).  *See also* Mich. Comp. Laws § 600.2957(1).  Thus, in an action based on tort, like plaintiff's attorney malpractice case, "the liability of each person shall be allocated. . . in direct proportion to the person's percentage of fault."  *Id.*  Plaintiff therefore asserts that he is not required to explicitly plead joint and several

liability in his Complaint.  Plaintiff further asserts that his claims are not separate and distinct, but rather, a common liability case against multiple tortfeasors whose successive negligent acts caused a single indivisible injury.  *See Watts v. Smith*, 375 Mich. 120, 124-25 (1965) (recognizing that "a single indivisible injury" may result from "successive negligent acts of defendants" and create a right for the plaintiff to "maintain his action against both" defendants in the same suit).

The Court agrees with plaintiff.  His claims against the Mann and Margolis defendants', although presented in separate counts, are not separate and distinct liabilities.  This conclusion is further supported by the application of fair share liability pursuant to Mich. Comp. Laws § 600.2757(1).  As a result, the entirety of damages sustained by plaintiff are properly considered in determining the amount in controversy.

## B. The Margolis Defendants' Motion to Dismiss

The elements of a legal malpractice action in Michigan include "(1) the existence of an attorney-client relationship; (2) negligence in the legal representation of the plaintiff; (3) that the negligence was a proximate cause of an injury; and (4) the fact and extent of the injury alleged." *Charles Reinhart Co. v. Winiemko*, 444 Mich. 579, 585-86 (1994).  The Margolis defendants move to dismiss on three grounds - (1) Margolis was

not negligent, (2) Margolis' actions were not the proximate cause of plaintiff's injury, and (3) pursuant to *Boyle v. Odette*, 168 Mich.App. 737 (1988), Margolis is not liable for claims arising after plaintiff hired the Mann defendants. The Court addresses each argument in turn.

## 1. Negligence

Plaintiff asserts that the Margolis defendants were negligent in failing to advise that, after pleading pursuant to a *Cobbs* agreement, plaintiff could receive a sentence that would adversely affect his immigration status. (Doc. 1 at PageID 27). "An attorney is obligated to use reasonable skill, care, discretion and judgment in representing a client." *Lipton v. Boesky*, 110 Mich.App. 589, 594 (1981) (citing *Eggleston v. Boardman*, 37 Mich. 14, 16 (1877)). They must "behave as would an attorney of ordinary learning, judgment or skill under the same or similar circumstances." *Simko v. Blake*, 448 Mich. 648, 656 (1995) (internal quotations and ellipses omitted).

In *People v. Cobbs*, 443 Mich. 276 (1993), the Michigan Supreme Court approved a rule permitting judges to give a preliminary assessment of the "length of sentence that, on the basis of the information then available to the judge, appears to be appropriate for the charged offense." *Id.* at 283. These preliminary evaluations, known as "*Cobbs* agreements," *People v. McKay*, 706 N.W.2d 832, 833 (Mich. 2005), are not binding.

*Cobb*, 443 Mich. at 283. "However, a defendant who pleads guilty or nolo contendere in reliance upon a judge's preliminary evaluation. . . has an absolute right to withdraw the plea if the judge later determines that the sentence must exceed the preliminary evaluation." *Id.*

Plaintiff received a *Cobbs* agreement on or about April 24, 2014. (Doc. 1 at PageID 6). Pursuant to this agreement, plaintiff would plead no-contest to a single reduced charge of attempted criminal sexual conduct in the fourth degree. (*Id.*). Pursuant to the Michigan Penal Code, this charge is a "misdemeanor punishable by imprisonment for not more than 2 years or a fine of not more than $500.00, or both." Mich. Comp. Laws § 750.250e(2). Plaintiff would not receive "up front" jail time, but instead, be sentenced to probation, and only serve jail time only if he violated his probation terms. (Doc. 1 at PageID 6). Plaintiff consulted with Margolis regarding the implications of this *Cobbs* agreement on his immigration status. (*Id.*). Margolis advised that accepting this deal would not adversely affect plaintiff's immigration status. (Doc. 1 at PageID 7). Based on this advice, plaintiff entered his plea on April 24, 2014. (*Id.*). Plaintiff's sentencing hearing was held on June 13, 2014. (Doc. 1 at PageID 8). Margolis did not attend. (*Id.*). Plaintiff was sentenced to two years of probation with numerous conditions, including a suspended jail sentence of

365 days.  (Doc. 1 at PageID 10; Doc. 19 at PageID 214).  Plaintiff was

thereafter denied readmission to the United States on the basis of this

sentence.  (Doc. 1 at PageID 18).

The Margolis defendants' argue that they were not negligent in

advising plaintiff on the impact of the *Cobbs* agreement because Margolis

had no duty to anticipate that the district court would make a "mistake" and

sentence plaintiff to a term of imprisonment.  This argument fails.  Even if

the suspended sentence that plaintiff ultimately received was a mistake,

from the moment plaintiff pleaded until he was sentenced on June 13,

2014, he faced the possibility of being sentenced to a period of jail time that

would impact his immigration status.  This is so because, despite the April

24, 2014 preliminary evaluation, the judge had the power to deviate from

plaintiff's *Cobbs* agreement and sentence him to a term of imprisonment

not to exceed two years.  *See* Mich. Comp. Laws § 750.250e(2).  Margolis

did not advise plaintiff of this possibility, nor how imprisonment would

impact his immigration status.  Instead, according to Margolis' own

testimony, he assumed that plaintiff would receive probation.  (Doc. 17-1 at

PageID 170).  Margolis later admitted that he should have told Simon,

plaintiff's criminal attorney, to make sure that plaintiff was not sentenced to

"jail of any sort, even if it's suspended."  (Doc. 17-1 at PageID 169).

Margolis failed to provide this advice at the plea hearing on April 24, 2014. He also failed to share this information with plaintiff or Simon at any time leading up to the sentencing hearing. Finally, Margolis did not attend the June 13, 2014 hearing, and failed to provide this advice when the sentence was delivered. Plaintiff's factual allegations, therefore, present a plausible claim that the Margolis defendants were negligent. As such, their motion to dismiss may not be granted on this ground.

### 2. Causation

Plaintiff argues that Margolis' negligent advising was a proximate cause of plaintiff's inability to reenter the United States. The Margolis defendants assert that the state court's sentence constitutes an unforeseeable intervening cause that breaks the chain of causation.

Proximate cause is "that which in a natural and continuous sequence, unbroken by any new, independent cause, produces the injury, without which such injury would not have occurred." *McMillian v. Vliet*, 374 N.W.2d 679, 681 (Mich. 1985) (quoting *Weissert v. City of Escanaba*, 298 Mich. 443, 452 (1941)). An intervening cause is "one which actively operates in producing harm to another after the actor's negligent act or omission has been committed." *Id.* at 682 (international quotations and citations omitted). "An intervening cause breaks the chain of causation and

constitutes a superseding cause which relieves the original actor of liability, unless it is found that the intervening act was reasonably foreseeable." *Id.* (internal citations omitted). An injury may be produced by more than one cause. *Id.* Causes may "operate concurrently" and "both constitute a direct proximate cause of the resulting harm." *Id.* An intervening cause "is distinguishable from concurrently operating causes in that it involves an intervening cause or act which begins operating after the actor's negligent act or omission has been committed." *Id.* (international quotations and citations omitted).

Plaintiff's allegations present a plausible claim of causation even if the suspended jail time sentence is viewed as an intervening cause. The state court judge was not bound by the *Cobbs* agreement and could have sentenced plaintiff to up to two years of imprisonment. *See* Mich. Comp. Laws § 750.250e(2). Plaintiff's sentence, therefore, was reasonably foreseeable. It does not constitute a superseding cause that breaks the chain of causation and relieves the Margolis defendants of liability.

### 3. *Boyle*

The Margolis defendants argue that they are not liable because, pursuant to *Boyle v. Odette*, 168 Mich.App. 737 (1988), if a plaintiff hires a new attorney, and that attorney has time to correct the former attorney's

alleged malpractice, then a plaintiff cannot establish the element of proximate causation.  This argument fails because it expands *Boyle* far beyond its holding.

In *Boyle*, the plaintiff alleged that the defendant committed legal malpractice by failing to file a timely claim.  168 Mich.App. at 476.  The court found that the defendant could not be held liable for failing to file a claim "prior to expiration of the period of limitation where he ceased to represent plaintiff and was replaced by other counsel before the statutory period ran on her underlying actions."  *Id.* at 746.

Most citations to *Boyle* concern a failure to file an action within the period of limitations.  *See e.g., Estate of Mitchell v. Dougherty*, 249 Mich.App. 668 (2002).  Michigan courts have expanded Boyle's reach on two occasions.  In *Marshall v. Cmerjrek*, No. 197966, 1998 WL 1992812 (Mich. Ct. App. May 8, 1998), the court cited *Boyle* to rule that the defendant was not liable for "failing to attain the appropriate valuation on the limited partnership assets when he was replaced by other counsel while plaintiff held an equal interest in the limited partnerships and before the trial court ruled on the then-pending motion challenging the valuation and disposition of those assets."  *Id.* at *1.  In *Melody Farms, Inc. v. Carson Fischer, PLC*, No. 215883, 2001 WL 740575 (Mich. Ct. App. Feb. 16,

2001), a Michigan court of appeals applied *Boyle* to find that the defendants were not liable for malpractice because subsequent counsel, hired several months prior to the close of discovery, "had adequate time to correct any discovery deficiencies left by defendants." *Id.* at *4. Acknowledging these cases, the Court finds insufficient support for the Margolis defendants' broad proposition that liability does not exist where a subsequent attorney has time to correct the former attorney's alleged malpractice.

The Margolis defendant's argument is further undermined by cases where Michigan courts refused to expand *Boyle*. In *Teodorescu v. Bushnell, Gage, Reizen & Byington*, 201 Mich.App. 260 (1993), the court clarified that "*Boyle* does not hold that an attorney may cut off his liability for negligent acts by ending the attorney-client relationship before the harm caused by the acts reaches its full extent." *Id.* at 265-66. *Teodeorescu*, therefore, implies that the Margolis defendants may not defeat plaintiff's claim by asserting that the parties relationship terminated before plaintiff was denied re-entry to the United States. Furthermore, in *Adams v. Fausone Bohn LLP*, No. 312578, 2014 WL 231915 (Mich. Ct. App. Jan. 21, 2014), the defendant attorneys allegedly "failed to timely object to an order for sanctions that omitted certain lawyers' names and failed to clearly

exclude the sanctions issue when drafting a consent judgment." *Id.* at *1. Relying on *Boyle* and *Mitchell*, the trial court dismissed the case after determining that the attorney hired to replace the defendants could have corrected the sanctions order. *Id.* The court of appeals disagreed, stating that these cases did not apply to the plaintiff's claims that the defendants "negligently drafted the consent judgment in the first instance." Here, in addition to the ultimate injury regarding his re-entry, plaintiff alleges that the Margolis defendants negligently provided insufficient advice regarding his plea and sentencing. Thus, like *Adams*, the Margolis defendants should not escape liability for acting negligently "in the first instance," merely because another attorney could have advised plaintiff on how to avoid issues re-entering the United States. *Id.*

## IV. Conclusion

For the reasons stated above, defendants' motions to dismiss are DENIED.

IT IS SO ORDERED.

Dated: June 26, 2017

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 26, 2017, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk